**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **JENNIFER CARNLEY,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **No. 3:12-CV-3535-N (BF)** |
| | § | |
| **CAROLYN W. COLVIN,** | § | |
| **Commissioner of the Social** | § | |
| **Security Administration,** | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

This is an appeal from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying the claim of Jennifer Carnley ("Plaintiff") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under Titles II and XVI, respectively, of the Social Security Act (the "Act"). The Court considered Plaintiff's Brief, Defendant's Response Brief, and Plaintiff's Reply Brief. The Court reviewed the record in connection with the pleadings. For the reasons that follow, the Court recommends that the final decision of the Commissioner be **AFFIRMED**.

**Background**[1]

On December 16, 2009, Plaintiff filed applications for DIB and SSI. (Tr. 129-39.) In her applications, Plaintiff alleged a disability onset date of August 6, 2007, due to seizures, bipolar disorder, attention deficit disorder ("ADD"), anxiety, and schizophrenia. (Tr. 171-72.) The applications were denied initially and again upon reconsideration. (Tr. 66-69.)

---

[1] The following background facts are taken from the transcript of the administrative proceedings, which is designated as "Tr."

Plaintiff requested a hearing, which was held on March 9, 2011. (Tr. 26-65.) Plaintiff, represented by counsel, testified at the hearing, along with a vocational expert, Mr. Russell Bowden ("VE"). (Tr. 26.) Plaintiff was born on February 16, 1974, and she was thirty-seven years old at the time of the hearing. (Tr. 24, 29.) Plaintiff has a high school education and she had a real estate license in Florida, but the license has since expired. (Tr. 30.) Plaintiff has past relevant work as an on-site home salesperson, new accounts teller and receptionist, and telemarketer. (Tr. 23.)

On May 25, 2011, the Administrative Law Judge ("ALJ") issued an unfavorable decision. (Tr. 15-25.) In that decision, the ALJ analyzed Plaintiff's claim pursuant to the familiar five-step sequential evaluation process.[2] Before proceeding to step one, the ALJ found that Plaintiff met the insured status requirements of the Act through September 30, 2012. (Tr. 20.) At step one, the ALJ determined that Plaintiff had not engaged in substantial work activity since her August 6, 2007, alleged onset date. (*Id.*) At step two, the ALJ found that Plaintiff's seizure disorder, bipolar disorder, and alcohol abuse were severe impairments. (*Id.*) However, at step three, the ALJ determined that Plaintiff's impairments did not meet or medically equal the requirements of any listed impairments for presumptive disability under the Social Security Regulations (the "Regulations"). (Tr. 20-21.)

Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC"). He found that Plaintiff could perform unskilled sedentary work, in that she could lift up to 10 pounds occasionally and less than 10 pounds frequently, stand 2 hours in an 8-hour workday, and sit 6 hours in an 8-hour workday. (Tr. 21.) The ALJ additionally determined that Plaintiff should

---

[2] (1) Is the claimant currently working? (2) Does she have a severe impairment? (3) Does the impairment meet or equal an impairment listed in Appendix 1? (4) Does the impairment prevent her from performing her past relevant work? (5) Does the impairment prevent her from doing any other work? 20 C.F.R. § 416.920.

be limited to simple one to two-step repetitive tasks and she could have no contact with the public and only incidental contact with supervisors. (*Id.*) At step four, the ALJ determined that Plaintiff was not able to perform her past relevant work. (Tr. 23.) However, at step five, the ALJ found that Plaintiff was capable of performing other jobs that exist in significant numbers in the national economy, such as an assembly worker and packager. (Tr. 24.) Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act from August 6, 2007, her alleged onset date, through May 25, 2011, the date of the decision. (Tr. 25.)

Plaintiff requested review of the ALJ's decision from the Appeals Council, however, the request for review was denied on June 13, 2012. (Tr. 4-8.) Thus, the ALJ's decision became the final decision of the Commissioner from which Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## **Standard of Review**

To be entitled to social security benefits, a plaintiff must prove that she is disabled for purposes of the Social Security Act. *Leggett v. Chater*, 67 F.3d 558, 563–64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled. Those steps are:

1.      An individual who is working and engaging in substantial gainful activity will not

be found disabled regardless of medical findings.

2.    An individual who does not have a "severe impairment" will not be found to be disabled.

3.    An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4.    If an individual is capable of performing the work the individual has done in the past, a finding of "not disabled" must be made.

5.    If an individual's impairment precludes her from performing her past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)).

Under the first four steps of the inquiry, the burden lies with the claimant to prove her disability.

*Leggett*, 67 F.3d at 564. The inquiry terminates if the Commissioner determines at any point during

the first four steps that the claimant is disabled or is not disabled. *Id*. Once the claimant satisfies her

burden under the first four steps, the burden shifts to the Commissioner at step five to show that

there is other gainful employment available in the national economy that the claimant is capable of

performing. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied

either by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational

testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564.

Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits

is supported by substantial evidence and to whether the proper legal standard was utilized.

*Greenspan*, 38 F.3d at 236; 42 U.S.C. § 405(g). Substantial evidence is defined as "that which is

relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must

4

be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. However, "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).

## Issues

1. Whether new evidence submitted to the Appeals Council diluted the record such that the ALJ's decision is not supported by substantial evidence.

2. Whether the ALJ's RFC assessment is supported by substantial evidence.

## Analysis

**Whether new evidence submitted to the Appeals Council diluted the record such that the ALJ's decision is not supported by substantial evidence**

In conjunction with her request for review by the Appeals Council, Plaintiff submitted new medical evidence obtained after the ALJ's hearing. (Tr. 444-59.) On June 13, 2012, the Appeals Council denied Plaintiff's request for review, stating that "we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council. We found that this information does not provide a basis for changing the Administrative Law Judge's decision." (Tr. 4-5.) In her brief, Plaintiff contends that the Appeals Council failed to properly consider the new medical evidence because the Council did not explain why the medical source's opinion was not adopted. (Pl.'s Br. at 12-14.) Plaintiff argues that failure to consider the new opinion was error which requires remand because the new evidence diluted the record such that the ALJ's decision was no longer substantially supported and, had the new opinion been adopted, there existed a reasonable probability that the findings in her case would have been different. (*Id.*)

5

The Regulations provide a claimant the opportunity to submit new and material evidence to the Appeals Council for consideration when deciding whether to grant a request for review of an ALJ's decision. 20 C.F.R. § 404.970(b). For new evidence to be considered material, there must exist "the reasonable possibility that it would have changed the outcome of the Secretary's determination." *Latham v. Shalala,* 36 F.3d 482, 483 (5th Cir. 1994) (quoting *Chaney v. Schweiker,* 659 F.2d 676, 679 (5th Cir. 1981)). Additionally, to be considered material, the evidence must "relate to the time period for which benefits were denied." *Johnson v. Heckler,* 767 F.2d 180, 183 (5th Cir. 1985). Evidence of a later-acquired disability or a subsequent deterioration of a non-disabling condition is not material. *Id.*

Evidence submitted for the first time to the Appeals Council is considered part of the record upon which the Commissioner's final decision is based. *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005). A court considering that final decision should review the record as a whole, including the new evidence, to determine whether the Commissioner's findings are supported by substantial evidence and should remand only if the new evidence dilutes the record to such an extent that the ALJ's decision becomes insufficiently supported. *Higginbotham v. Barnhart*, 163 Fed. Appx. 279, 281-82 (5th Cir. 2006).

Based on its internal procedures, the Appeals Council need not provide a detailed discussion about all new evidence submitted to it. *Higginbotham,* 405 F.3d at 335 n.1 (referring to a memorandum from the Commissioner's Executive Direct of Appellate Operations dated July 1995). Nonetheless, where new medical evidence is so inconsistent with the ALJ's findings that it undermines the ultimate disability determination, several judges have found that the case should be remanded so that the Appeals Council can fully evaluate the treating source's opinion. *See Brown*

6

*v. Astrue,* No. 3-10-CV-00275-O-BK, 2010 WL 3895509, at *4-6 (N.D. Tex. Sept. 13, 2010) (remand required where new evidence submitted to the Appeals Council consisted of a treating source's opinion which significantly conflicted with the ALJ's assessment of Plaintiff's work abilities and was corroborated by other medical evidence of record); *Lee v. Astrue*, No. 3–10–CV–155–BH, 2010 WL 3001904, at *7 (N.D. Tex. July 31, 2010) (remanding to Commissioner where new evidence submitted to the Appeals Council, which consisted of a treating psychiatrist's opinion, diluted the record to the point that Commissioner's determination was insufficiently supported); *Stewart v. Astrue*, No. 7–07–CV–052–BD, 2008 WL 4290917, at *4 (N.D. Tex. Sept.18, 2008) (remand required where no indication that Appeals Council evaluated treating source statement regarding claimant's ability to perform work-related activities and new evidence so inconsistent with ALJ's findings that it undermined ultimate disability determination).

In the case at hand, Plaintiff submitted new medical evidence which consisted of a Millon Clinical Multiaxial Inventory III ("MCMI-III") Interpretive Report from Dr. George Mount, as well as Dr. Mount's medical assessment of Plaintiff's ability to perform work-related activities. (Tr. 444-59.) The MCMI-III was performed on June 17, 2011, just a few weeks after the ALJ's hearing. (Tr. 445.) In the beginning of his report, the doctor indicated that "[t]his patient's response style may indicate a tendency to magnify illness, an inclination to complain, or feelings of extreme vulnerability associated with a current episode of acute turmoil. The patient's scale scores may be somewhat exaggerated, and the interpretations should be read with this in mind." (Tr. 446.) Taking the results of the MCMI-III as accurate, Dr. Mount opined that Plaintiff would not tolerate having her work judged and evaluated by a supervisor, she would not benefit from a supportive workplace environment, and she could not sustain a normal workday or workweek without significant

7

interruptions from psychologically based symptoms. (Tr. 454.) However, in the evaluation, Dr. Mount also noted that it was likely that Plaintiff's difficulties could be managed with either brief or extended therapeutic methods. (Tr. 452.)

Regarding Plaintiff's mental ability to do work-related activities, Dr. Mount opined that Plaintiff's ability to function in the following areas was almost absent: follow work rules; relate to co-workers; deal with the public; interact with supervisors; deal with work stress; understand, remember, and carry out complex, detailed, or simple job instructions; behave in an emotionally stable manner; relate predictably in social situations; and demonstrate reliability. (Tr. 455-56.) The doctor opined that Plaintiff's ability to function in the following areas was seriously limited to almost absent: use judgment, function independently, maintain attention/concentration, and maintain personal appearance. (*Id.*) The doctor noted that Plaintiff does not use drugs or alcohol and she can manage in her own best interests. (Tr. 457-58.) Dr. Mount diagnosed Plaintiff with depression, bipolar disorder, anxiety, and post-traumatic stress disorder ("PTSD"). (Tr. 459.) Plaintiff was assigned a Global Assessment of Functioning ("GAF") score of 37.[3] (*Id.*)

This Court finds that the new medical evidence does not dilute the record to such an extent that the ALJ's findings are not supported by substantial evidence. As an initial matter, the Court points out that the new evidence does not consist of a treating physician's opinion but, instead, is based on an examining physician's one-time assessment of Plaintiff. Although the opinion appears to essentially render Plaintiff incapable of competitive work, the doctor himself stated that the

---

[3] A GAF score represents a clinician's judgment of an individual's overall level of functioning. *See* AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. text rev. 2000) (DSM). A GAF score of 31-40 is indicative of some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood. *See id.*

findings from the MCMI-III may be exaggerated and, thus, they should be interpreted accordingly. Plaintiff argues that Dr. Mount's opinion conflicts with the ALJ's RFC formulation because the doctor opined that Plaintiff would not tolerate having her work judged and evaluated by a supervisor, and she could not sustain a normal workday or workweek without significant interruptions from her symptoms. (Pl.'s Br. at 14.) However, Dr. Mount made these opinions under the assumption that the interpretive results of the MCMI-III were accurate. (Tr. 454.) Additionally, in his report, Dr. Mount was of the opinion that Plaintiff's impairments could be managed with therapy. An impairment that can be controlled or remedied by medication or therapy cannot serve as a basis for a finding of disability. *See Johnson v. Bowen,* 864 F.2d 340, 348 (5th Cir. 1988). Finally, the degree of limitation provided in Dr. Mount's opinion simply is not supported by the other medical evidence of record.

On February 13, 2010, a mental status exam was performed by Dr. Lawrence Sloan. (Tr. 345-51.) Dr. Sloan noted that Plaintiff was on-time for the appointment, casually dressed, marginally groomed, and she described her chief complaint as "a lot of anxiety...think that people are watching me a lot of the time." (Tr. 345.) Plaintiff told the doctor that her mental health issues began three years ago, just after she married her abusive husband, with her moods varying from anger to depression to happiness. (*Id.)* Plaintiff reported three hospitalizations at Green Oaks, where she was diagnosed with bipolar disorder, due to her violent behavior. (Tr. 345-46.) Plaintiff told Dr. Sloan that she was able to meet all of her daily living activities in that she can "groom herself, dress herself, feed herself, shop for food, prepare food, wash clothes, and clean the home." (Tr. 347.) Plaintiff reported that she talks on the phone, watches television, listens to the radio, visits with friends, takes her medications without assistance, and refills her own prescriptions. (*Id.)* Plaintiff described her mood as "good" for the past two weeks. (Tr. 348.) The doctor diagnosed Plaintiff with bipolar

disorder and assigned her a GAF score of 40. (Tr. 349.) Dr. Sloan noted that Plaintiff's symptoms were moderately well-controlled with medication, but her impairment was significant. (*Id.*)

A psychiatric review technique ("PRT") was completed by Dr. Jim Cox, a state agency medical consultant, on March 11, 2010. (Tr. 352-65.) The doctor found Plaintiff to be mildly limited in her daily living activities and in maintaining concentration, persistence, or pace; and moderately limited in maintaining social functioning. (Tr. 362.) Dr. Cox noted that Plaintiff had bipolar disorder with one or two episodes of decompensation. (Tr. 355, 362.) The doctor also made the notation that Plaintiff has a history of drug use and seizure disorder. (Tr. 364.) Dr. Cox opined that a GAF score of 40 underestimated her current functional capabilities. (*Id.*)

Dr. Cox also assessed Plaintiff's mental RFC after reviewing the relevant medical evidence. (Tr. 374-76.) The assessment found Plaintiff to be moderately limited in the following categories: the ability to understand, remember, and carry out very short and simple instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; respond appropriately to changes in the work setting; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others. (Tr. 374-75.) Plaintiff was found to be not significantly limited in the ability to remember

10

locations and work-like procedures, make simple work-related decisions, ask simple questions or request assistance, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, and be aware of normal hazards and take appropriate precautions. (*Id.*) The doctor found Plaintiff to be markedly limited in her ability to understand, remember, and carry out detailed instructions. (Tr. 374.) Dr. Cox opined that Plaintiff retained the ability to understand, remember, and carry out only simple instructions, make simple decisions, concentrate for extended periods, interact with others, and respond to changes. (Tr. 376.)

Records from ABC Behavioral Health ("ABC") demonstrate that Plaintiff was treated for bipolar disorder, panic disorder, and polysubstance dependence beginning in March 2008. (Tr. 378-418, 422-43.) Although Plaintiff was consistently assigned low GAF scores, her mental status examinations were fairly normal. For example, on January 6, 2009, and October 13, 2009, Plaintiff was assigned a GAF score of 40, yet her insight and judgment were fair, her concentration and memory were intact, she had no homicidal or suicidal ideation, she was well-groomed, friendly, relaxed, and her mood was good. (Tr. 389-90, 400-01.) Notes from January 6, 2009, also indicate that Plaintiff was heavily involved in church, but she continued to have panic attacks. (Tr. 401.) On February 2, 2010, Plaintiff's GAF score was 35, but her insight and judgment were fair, her concentration and memory were intact, she was well-groomed, friendly, relaxed, and her mood was good. (Tr. 383-84.)

A treatment plan was completed by ABC on April 28, 2010. (Tr. 441-43.) Plaintiff reported no desire to harm herself or others, but she had symptoms of anger, mood swings, anxiety, restlessness, and unusual thoughts. (Tr. 441.) The qualified medical health professional indicated that Plaintiff attends under half of her scheduled doctor's appointments, but her level of treatment seemed

11

to be okay and she did not require more intensive treatment. (*Id.*) It was recommended that Plaintiff attend all her doctor's appointments and take her medications as prescribed. (*Id.*) Non-compliance with treatment prescribed by a physician is grounds for a finding of not disabled. *Johnson v. Sullivan,* 894 F.2d 683, 685 n.4 (5th Cir. 1990).

Records from May 25, 2010, show that Plaintiff's GAF score was 40, her mental status exam was normal, and she reported feeling really good because her husband had not bothered her at all and that was a big relief for her. (Tr. 439-40.) On June 27, 2010, Plaintiff was given a GAF score of 40; her mental status examination was normal except the doctor noted her mood as hypermanic; and Plaintiff reported that she was feeling good, having happy dreams, enjoying living alone, and taking care of herself physically and emotionally. (Tr. 435-36.) On February 8, 2011, Plaintiff was assigned a GAF score of 40, but her mental status exam was normal and her mood was described as happy. (Tr. 423-24.) Even at Plaintiff's lowest point on April 27, 2010, she was assigned a GAF score of 28, indicating serious impairment or an inability to function, but her mental status exam was normal except for paranoia, and her mood was okay. (Tr. 379-80.)

Contrary to Plaintiff's contention, the Appeals Council was not under a duty to provide a detailed discussion of the new evidence from Dr. Mount. *See Higginbotham,* 405 F.3d at 335 n.1. Moreover, the case law which Plaintiff provides in support of her argument that the Appeals Council was required to explain why it rejected Dr. Mount's opinion is unavailing. (Pl.'s Reply Br. at 5-6.) Every case cited by Plaintiff is distinguishable from the case at hand because those cases involved new evidence submitted by a *treating* physician whereas, here, Dr. Mount examined Plaintiff on a one-time basis only. *See, e.g., Lee,* 2010 WL 3001904, at *7 (remand required where new evidence

12

submitted to the Appeals Council, which consisted of a treating psychiatrist's opinion, diluted the record to the point that the Commissioner's decision was insufficiently supported).

The issue is whether the new evidence diluted the record to such an extent that the ALJ's decision is not sufficiently supported. *Higginbotham*, 163 Fed. Appx. at 281-82. After reviewing the record as a whole, including Dr. Mount's new evidence, the Court finds that substantial evidence supports the ALJ's decision. While Plaintiff's bipolar disorder is a severe impairment that gives her some significant limitations, the ALJ accounted for those limitations in his RFC formulation when he limited her to simple tasks with no public contact and only incidental contact with supervisors. Thus, the new evidence does not dilute the record to such an extent that the ALJ's decision is insufficiently supported. Accordingly, this Court finds no reason to remand the case to the Commissioner.

**Whether the ALJ's RFC assessment is supported by substantial evidence**

In his decision, the ALJ determined that Plaintiff retained the RFC to perform unskilled sedentary work in that she could lift up to 10 pounds occasionally and less than 10 pounds frequently, stand 2 hours in an 8-hour workday, and sit 6 hours in an 8-hour workday. Further, the ALJ limited Plaintiff to simple one to two-step repetitive tasks where she would have no contact with the public and only incidental contact with supervisors. Plaintiff contends that the ALJ's RFC formulation is not supported by substantial evidence because the ALJ failed to account for (1) limitations from Plaintiff's seizure disorder, and (2) limitations in Plaintiff's attention and concentration and her ability to sustain a normal workday and workweek. (Pl.'s Br. at 12-15.)

Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a

preponderance." *Leggett*, 67 F.3d at 564. An individual's RFC is her ability to perform physical and mental work activities on a regular and continuing basis notwithstanding limitations from her impairments. 20 CFR § 404.1545. A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p,1996 WL 374184, at *2 (July 2, 1996). The ALJ is responsible for determining a claimant's RFC. 20 CFR § 404.1546(c). In assessing the claimant's RFC, the ALJ will consider all medical evidence as well as other evidence provided by the claimant. 20 CFR §404.1545(a)(3). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).

Plaintiff is correct that the ALJ failed to include limitations from her seizure disorder in his RFC finding. This clearly was error. The medical evidence establishes that Plaintiff has a history of seizures and that she was diagnosed with a seizure disorder. (*See* Tr. 263, 278-80, 340-41, 364, 373.) However, doctors at Baylor Medical Center at Garland and Methodist Medical Center opined that Plaintiff's seizures were related to her alcohol abuse. (Tr. 263, 280.) Additionally, the doctor at Baylor University Medical Center reported that Plaintiff's primary care provider indicated that Plaintiff's medication regimen had changed and she may not be taking her medication properly. (Tr. 340.) Nonetheless, even the ALJ recognized Plaintiff's seizure disorder as a severe impairment.

The state agency medical consultant who completed Plaintiff's physical RFC assessment opined that Plaintiff's seizure disorder would limit her in that she could not be around open flames, hazards such as machinery and heights, and she could not drive. (Tr. 370.) At the hearing, the ALJ incorporated these limitations into his hypothetical questions to the VE. For example, the ALJ initially asked the VE to consider whether Plaintiff could perform her past relevant work in light of her necessary seizure precautions. (Tr. 55.) The VE explained that "when you talk about seizure

14

precautions from a vocational standpoint you want to avoid working around open flames, moving machinery, uneven surfaces, heights or, you know, dangerous work environments." (*Id.)* The VE found that Plaintiff could perform her past relevant work with seizure precautions, however, when the ALJ added the other limitations from Plaintiff's RFC, the VE explained that she could not perform her past relevant work. (Tr. 55-58.) Ultimately, the VE determined that with Plaintiff's RFC limitations she could perform assembly and packaging jobs. (Tr. 59-60.) The ALJ inquired as to whether these jobs were performed in a noisy environment and the VE responded "usually when you're talking about these types of packaging jobs or, or assembly jobs it's a relatively quiet environment because there's no – with unskilled assembly and packaging there's no machinery, there's no, you know, machines that are going to make sounds or noise." (Tr. 60-61.) He further explained that these unskilled positions were hands-on packaging and assembly and so they were not in factories with "whirling machines or drill presses or, or pumps or that type of thing." (Tr. 61.) Based on this evidence, at step 5, the ALJ found that Plaintiff was capable of performing the occupations of an assembly worker and packager.

In her brief, Plaintiff urges this Court to follow the reasoning outlined in *Martinez v. Astrue*, No. 2:10-CV-0102, 2011 WL 4128837, at *5-7 (N.D. Tex. Sept. 9, 2011), *rec. adopted,* 2011 WL 4336701 (N.D. Tex. Sept. 15, 2011). However, this Court is not so inclined, as the facts in *Martinez* are distinguishable from the case at hand. In *Martinez*, the ALJ failed to include limitations from the plaintiff's hand surgery in the plaintiff's RFC after the ALJ had found the hand surgery to be a severe impairment. *Id.* at *5-6. The court remanded the case to the Commissioner because it was unable to determine whether the ALJ intended the hand surgery to be a severe impairment and, if so, whether the RFC should have included handling or manipulative limitations. *Id.* at *7. The court explained

15

that if the RFC should have included such limitations then the ALJ would be required to seek additional testimony from the VE as to whether the plaintiff could still perform the jobs initially identified by the VE. *Id.* Here, the ALJ clearly found Plaintiff's seizure disorder to be a severe impairment, yet he failed to incorporate limitations from the disorder in her RFC. Nonetheless, although the ALJ did commit this error, it is clear from the hearing testimony that the ALJ intended to include seizure limitations in the RFC because his hypothetical questions posed to the VE included such limitations. (Tr. 55-61.) Hence, there would be no need to remand this case to the Commissioner to seek additional testimony from the VE regarding Plaintiff's seizure limitations, as the VE already considered this impairment when he identified positions that Plaintiff was capable of performing.

"Procedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected." *Audler v. Astrue,* 501 F.3d 446, 448 (5th Cir. 2007). Accordingly, Plaintiff would have to show that she was prejudiced by the ALJ's error. However, Plaintiff cannot demonstrate that the incorporation of her seizure limitations in her RFC might have led to a different outcome. The ALJ inquired about these limitations to the VE, and the VE considered them when he identified the positions of assembly worker and packager. Therefore, the inclusion of seizure precautions in Plaintiff's RFC would have led to the same outcome because the VE still would have found Plaintiff capable of performing the occupations of assembly worker and packager.

Plaintiff's argument that the occupations of assembly worker and packager are defined in the Dictionary of Occupational Titles ("DOT") as requiring work around hazardous machinery lacks merit. (Pl.'s Br. at 13-14.) Although the definition for packager mentions work involving a conveyor

16

and the definition of assembly worker mentions tending to machines, the VE specifically testified that unskilled assembly worker and packager occupations do not require work with heavy, loud machinery. When faced with an implied conflict that did not undergo adversarial cross-examination at the hearing, the ALJ may rely on the VE's testimony so long as the record reflects an adequate basis for doing so. *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000). The conflict here, if any, would be implied and Plaintiff's counsel did not inquire as to the conflict at the hearing, thus, the Court finds that the ALJ could rely on the testimony of the VE because the record reflects an adequate basis for doing so.

Plaintiff's next contention is that the ALJ failed to incorporate limitations regarding her attention and concentration and her ability to sustain a normal workday and workweek in her RFC. However, the ALJ did consider limitations in Plaintiff's ability to concentrate and pay attention when he restricted Plaintiff to only performing simple one to two-step repetitive tasks. This limitation coincides with Dr. Cox's opinion that Plaintiff retained the ability to understand, remember, and carry out only simple instructions and make simple decisions. In support of her position, Plaintiff argues that Dr. Cox found Plaintiff moderately limited in her ability to maintain attention and concentration and in her ability to sustain an ordinary work routine, and the VE testified that a moderate limitation in those areas would preclude competitive employment. (Pl.'s Br. at 15.) However, Plaintiff fails to mention that Dr. Cox additionally opined that Plaintiff could concentrate for extended periods. Moreover, before the VE provided that response, Plaintiff's counsel indicated to the VE that *she* was going to define "moderately" limited as meaning that Plaintiff would have difficulty completing tasks up to 15% of the time. (Tr. 61.) There are no rules, regulations, or evidence to support such a definition and, certainly, the ALJ was not required to adopt Plaintiff's

17

counsel's unsupported definition of "moderately" limited. Furthermore, the Fifth Circuit has found that moderate limitations in a claimant's ability to maintain attention and concentration for extended periods does not render the claimant incapable of performing competitive work. *See Cantrell v. McMahon*, 227 Fed. Appx. 321, 322 (5th Cir. 2007).

The ALJ based his mental RFC assessment on the evidence in the record. Dr. Sloan found Plaintiff's concentration and working memory to be impaired, but her immediate and long-term memory were intact, her judgment was intact, her thought processes were logical and goal directed, and her thinking was appropriate to the circumstances. Additionally, as outlined above, doctors at ABC repeatedly found Plaintiff's concentration and memory intact during her mental status examinations. Although Plaintiff testified that she had difficulty focusing and concentrating and she could not complete an 8-hour workday, the ALJ explained that these statements were inconsistent with the medical evidence in the record. (Tr. 23, 38, 45.) Subjective complaints must be corroborated by objective medical evidence. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).

The ALJ did not incorporate limitations regarding Plaintiff's ability to sustain a normal workday and workweek in her RFC because he did not find such limitations to be supported in the record. During her examination with Dr. Sloan, Plaintiff reported that she was able to meet all of her daily living activities because she could groom herself, dress herself, feed herself, shop for food, prepare food, wash clothes, and clean the home. Additionally, Plaintiff told Dr. Sloan that she talks on the phone, watches television, listens to the radio, visits with friends, takes her medications without assistance, and refills her own prescriptions. Plaintiff informed the doctor at ABC that she was heavily involved in church. It is appropriate for the court to consider the plaintiff's daily living activities when deciding the plaintiff's disability status. *See Leggett,* 67 F.3d at 565. Although Dr.

Mount opined that Plaintiff could not complete a normal workday or workweek without significant interruptions from her bipolar disorder, this opinion was based on the assumption that the MCMI-III report was accurate. The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Morris*, 864 F.2d at 336.

The Court finds that substantial evidence supports the mental limitations that the ALJ included in Plaintiff's RFC. Further, while the ALJ committed legal error in not incorporating Plaintiff's seizure limitations in her RFC, the Court finds such error to be harmless because Plaintiff was not prejudiced by the error. Accordingly, remand is not required.

### Recommendation

For the foregoing reasons, the Court recommends that the District Court **AFFIRM** the decision of the Commissioner, as it is supported by substantial evidence and the ALJ did not commit prejudicial legal error, and dismiss Plaintiff's Complaint with prejudice.

**SO RECOMMENDED**, August 30, 2013.


PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

19

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on the parties.  Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after service.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory, or general objections.  A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150 (1985).  Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).